UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES T.,<br><br>                        Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,<br>Commissioner of Social Security,<br><br>                        Defendant.[1] | Case No.: 21-cv-00556-MMA-JLB<br><br>**REPORT AND RECOMMENDATION RE: PLAINTIFF'S MERITS BRIEF**<br><br>**[ECF No. 13]** |

      This Report and Recommendation is submitted to the Honorable Michael M. Anello, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California.

      On March 30, 2021, Plaintiff James T. ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final administrative decision by the

---

[1] Kilolo Kijakazi is hereby substituted as the defendant in this case pursuant to Federal Rule of Civil Procedure 25(d).

Commissioner of Social Security ("Commissioner") denying his application for supplemental security income benefits ("SSI"). (ECF No. 1.)

Now pending before the Court and ready for decision is Plaintiff's merits brief in support of his appeal. (ECF No. 13.) Defendant filed an opposition to Plaintiff's merits brief (ECF No. 16), and Plaintiff filed a reply (ECF No. 17). For the reasons set forth below, the Court **RECOMMENDS** that Plaintiff's merits brief be **GRANTED**, and that Judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## I.     PROCEDURAL BACKGROUND

On November 30, 2018, Plaintiff filed an application for SSI under Title XVI of the Social Security Act, alleging disability beginning September 1, 2018. (AR[2] 328–36.) Plaintiff previously filed applications for disability insurance benefits and SSI on February 17, 2011, and March 20, 2015.[3] (AR 163, 216.) An administrative law judge ("ALJ") denied those claims on October 13, 2013, and September 5, 2018, respectively. (AR 160–80, 212–36.)

///

---

[2]     "AR" refers to the Certified Administrative Record filed on August 26, 2021. (ECF No. 9.)

[3]     In his decision regarding Plaintiff's November 2018 application, the administrative law judge explained that, absent a showing of changed circumstances since Plaintiff's latest final unfavorable decision, Plaintiff was subject to presumptions of nondisability and of continuing applicability of residual functional capacity. (AR 44.) Because there was "new and material evidence that would merit changing [Plaintiff]'s residual functional capacity from the 2015 claim," the administrative law judge found that the presumptions above did not apply. (AR 42, 45.) *See Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988) ("The principles of res judicata apply to administrative decisions, although the doctrine is applied less rigidly to administrative proceedings than to judicial proceedings. . . . The claimant, in order to overcome the presumption of continuing nondisability arising from the first administrative law judge's findings of nondisability, must prove 'changed circumstances' indicating a greater disability.").

After Plaintiff's November 2018 application was denied initially and upon reconsideration (AR 239–43, 249–54), Plaintiff requested an administrative hearing before an ALJ. (AR 257–59.) An administrative hearing was held on June 26, 2020. (AR 58–90.) Plaintiff appeared at the hearing with counsel, and testimony was taken from him, as well as from a vocational expert ("VE"). (AR 58–90.)

As reflected in his August 4, 2020, hearing decision, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from November 30, 2018, through the date of decision. (AR 39–53.) The ALJ's decision became the final decision of the Commissioner on February 17, 2021, when the Appeals Council denied Plaintiff's request for review. (AR 7–12.) This timely civil action followed. (*See* ECF No. 1.)

## II.  SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. § 416.920(a). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 30, 2018, the application date. (AR 45.)

At step two, the ALJ found that Plaintiff had the following severe impairments: cervical and lumbar strain and sprain; fracture of the left lateral malleolus, status-post open reduction and internal fixation; arthrosis of left shoulder; bipolar mood disorder; and schizoaffective disorder. (AR 45.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments. (AR 46.)

Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") "to perform medium work . . . except [he] can frequently handle and finger with the left upper extremity" with the following additional limitations: "[Plaintiff] is limited to understanding, remembering, and carrying out simple, routine tasks, only occasional interaction with the general public, only occasional work-related, non-personal, non-social interaction with co-workers and supervisors, and can perform jobs requiring only simple

work-related decisions." (AR 47–48.)

For purposes of his step four determination, the ALJ determined that Plaintiff had no past relevant work. (AR 52.)

The ALJ then proceeded to step five of the sequential evaluation process. Based on the VE's testimony that a hypothetical person with Plaintiff's vocational profile and RFC could perform the requirements of occupations that existed in significant numbers in the national economy (*i.e.*, kitchen helper, industrial cleaner, hospital cleaner), the ALJ found that Plaintiff was not disabled from November 30, 2018, through the date of decision. (AR 53.)

### III.   PLAINTIFF'S CLAIMS OF ERROR

The Court construes Plaintiff's merits brief as raising the following disputed issues as grounds for reversal and/or remand: (1) whether the ALJ properly evaluated the prior administrative medical findings from state agency consultants Dr. R. Paxton, M.D., and Dr. Harvey Bilik, Psy.D.; and (2) whether the ALJ properly evaluated the opinions of Plaintiff's treating physician, Dr. Gabrielle Cerda, M.D. (*See* ECF No. 13. at 9–13.)[4]

### IV.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 575–76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a

---

[4]   Plaintiff included a third issue in his merit's brief: whether the ALJ derived authority to hear this case from an unconstitutional delegation of authority. (ECF No. 13 at 14–18.) Plaintiff withdrew this issue in his reply brief. (ECF No. 17 at 2.) Therefore, the Court does not address this issue.

conclusion." *Richardson*, 402 U.S. at 401.  This Court must review the record as a whole and consider adverse as well as supporting evidence.  *Green v. Heckler*, 803 F.2d 528, 529–30 (9th Cir. 1986).  Where evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld.  *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).  In reaching his findings, the ALJ is entitled to draw inferences which logically flow from the evidence.  *Id.*

## V.   DISCUSSION

### A.   Legal Standards

#### 1.   The ALJ's Assessment of Plaintiff's RFC

The RFC is used at step four to decide if a claimant can do past relevant work.  20 C.F.R. § 416.945(5)(i).  A claimant's RFC "is the most [a claimant] can do despite [his or her] limitations." 20 C.F.R. § 416.945(a)(1); *see also Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) ("The RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities.")  The ALJ is "responsible for assessing [the RFC]." 20 C.F.R. § 416.946(c).  The ALJ must determine a claimant's RFC "based on all of the relevant medical and other evidence," and will consider "any statements about what [the claimant] can still do that have been provided by medical sources" and "descriptions and observations of [the claimant's] limitations" provided by the plaintiff and other non-medical sources.  20 C.F.R. § 416.945(3); *Laborin*, 867 F.3d at 1153.

#### 2.   The ALJ's Consideration of Medical Opinion Evidence

Previously, the Ninth Circuit recognized a hierarchy among the sources of medical opinions, known as the treating physician rule or the treating source rule.  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983); *see also Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 829 (2003).  Specifically, it required the ALJ to articulate "clear and convincing reasons" in order to "reject the treating doctor's ultimate conclusions" when

the treating doctor's opinion was contradicted by another doctor, or "specific and legitimate reasons supported by substantial evidence in the record" if it was not. *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995).

In 2017, the Commissioner promulgated new regulations, effective for claims filed on or after March 27, 2017, such as Plaintiff's. *See* 20 C.F.R. § 416.920c; AR 42. These regulations alter the definition of "medical opinion" and the way that ALJs consider and articulate their consideration of medical opinions. 20 C.F.R. § 416.920c(a)–(c). ALJs now consider the persuasiveness of a medical opinion using five factors: (1) supportability; (2) consistency; (3) relationship with claimant; (4) specialization; and (5) other factors, such as the source's knowledge of other evidence, social security requirements, and whether there was subsequently submitted evidence. 20 C.F.R. § 416.920c(c). Because the first two factors are the most important, ALJs must articulate their analysis as to those two factors. 20 C.F.R. § 416.920c(b)(2). But ALJs have discretion to explain their consideration of the remaining factors. *Id.* When ALJs find that "two or more medical opinions or prior administrative medical findings about the same issue are equally well-supported . . . and consistent with the record . . . but are not exactly the same, [they] will articulate how [they] considered" the other factors. 20 C.F.R. § 416.920c(b)(3). The new regulations eliminate the hierarchy of medical opinions and the treating physician rule. 20 C.F.R. § 416.920c(a).

**B.    Whether the ALJ Properly Evaluated Dr. Paxton and Dr. Bilik's Prior Administrative Medical Findings**

Plaintiff argues that the ALJ failed to incorporate certain limitations assessed in the prior administrative medical findings[5] completed by state agency medical consultants Dr.

---

[5]    "A prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review . . . in your current claim based on their review of the evidence in your case record. . . ." 20 C.F.R. § 416.913(a)(5).

Paxton and Dr. Bilik. (ECF No. 13 at 9–11.) Specifically, Plaintiff argues that Dr. Paxton and Dr. Bilik found that Plaintiff retained the concentration and pace for only one- and two-step tasks, the ALJ neither included this restriction nor articulated a reason for rejecting the restriction, and the jobs identified by the VE were inconsistent with the restriction. (*Id.*) Plaintiff argues, then, that "the Court should find that the ALJ's failure to include or reject the limitation in the [RFC] assessment is material error." (*Id.* at 11.) For the following reasons, the Court agrees that the ALJ erred and recommends that this issue be revisited on remand.

       1.    <u>Summary of Relevant Prior Administrative Medical Findings</u>

On March 14, 2019, Dr. Paxton completed an assessment of Plaintiff's mental RFC based on his healthcare providers' records from August 2018 to March 2019. (AR 182–84.) In the mental RFC assessment form, Dr. Paxton indicated that Plaintiff is not significantly limited in his ability to: remember locations and work-like procedures; understand and remember very short and simple instructions; carry out very short and simple instructions; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; make simple work-related decisions; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others. (AR 189–90.) However, Plaintiff would have moderate limitations in his ability to: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact

appropriately with the general public; and respond appropriately to changes in the work setting. (AR 189–90.) In narrative form, Dr. Paxton added the following:

> [Plaintiff] can understand and remember simple instructions. [Plaintiff] can sustain concentration and pace for simple one[-] and two-step mental tasks. [Plaintiff] can maintain the social demands of a work-like setting involving limited contact with co-workers and the general public. [Plaintiff] can adapt to changes in a work-like setting involving simple cognitive tasks and limited social contacts.

(AR 190.) On June 21, 2019, Dr. Bilik completed a similar assessment of Plaintiff's mental RFC on the reconsideration level of review. (AR 205–07.) Dr. Bilik concurred with Dr. Paxton's assessment. (AR 205–07.) Notably, Dr. Bilik agreed that Plaintiff "can sustain concentration and pace for simple one[-] and two-step mental tasks." (AR 207.)

### 2. Discussion

At the administrative hearing on June 26, 2020, the ALJ asked the VE to consider the following:

> [A]ssume a hypothetical individual [with the] same age, education, [and] work experience as [the Plaintiff], in this case with the following [RFC]: please assume a hypothetical individual with no exertional limits, however the individual would be limited [to] understanding, remembering and carrying out simple routine tasks. Only occasional interactions with the general public. Only occasional work[-]related[,] non-personal[,] non-social interaction with coworkers and supervisors. And can perform jobs requiring simple work[-]related decisions.

(AR 83–84.) Based on the ALJ's RFC, the VE identified three unskilled jobs with a General Education Development ("GED")[6] Reasoning Level of 2 ("Level 2 Jobs"),

---

[6] In considering potential occupations that a claimant may be able to perform at step five of the Commissioner's sequential evaluation process, the ALJ relies on the Dictionary of Occupation Titles ("DOT"), which is the Social Security Administration's "primary source of reliable job information" regarding jobs that exist in the national economy. *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990); *see also* 20 C.F.R. §§ 416.969, 416.966(d)(1). The DOT describes the requirements for each listed occupation, including the necessary GED levels; that is, "aspects of education (formal and informal) . . . required

including kitchen helper, industrial cleaner, and hospital cleaner.  (AR 84.)  The ALJ determined that the VE's testimony was "consistent with the information contained in the [DOT]." (AR 53.)  Jobs with a GED Reasoning Level of 1 ("Level 1 Jobs") "[a]pply commonsense understanding to carry out simple one- or two-step instructions [and] [d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." (ECF No. 13 at 11.)  Level 2 Jobs "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and] [d]eal with problems involving a few concrete variables in or from standardized situations." (*Id.*)

      Plaintiff argues Dr. Paxton and Dr. Bilik's RFC assessments would eliminate the jobs the ALJ identified because a limitation to "one[-] and two-step tasks" would limit Plaintiff to Level 1 Jobs.  (ECF No. 13 at 10–11.)  Defendant responds that "the ALJ properly evaluated the opinions regarding Plaintiff's mental limitations" and that "there were no conflicts between the RFC" and the vocational evidence.  (ECF No. 16 at 13, 16.)

      "The hypothetical an ALJ poses to a [VE], which derives from the RFC, must set out all the limitations and restrictions of the particular claimant.  Thus, a[n] RFC that fails to take into account a claimant's limitations is defective." *Valentine v. Commissioner Social Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (internal citation omitted).  Here, the ALJ explicitly noted that Dr. Paxton and Dr. Bilik's opinions were persuasive and articulated his analysis as to the opinions' supportability and consistency.  (AR 51.)  However, notwithstanding the ALJ's finding of persuasiveness, the ALJ failed to adopt all of Dr. Paxton and Dr. Bilik's mental limitations in Plaintiff's RFC, namely, he did not include the limitation that Plaintiff can only "sustain concentration and pace for simple one[-] and two-step mental tasks." (AR 47–48, 190, 207.)  Instead, the ALJ found that

---

of the worker for satisfactory job performance." Dictionary of Occupational Titles, Fourth Edition, Revised, App'x C, 1991 WL 688702 (4th ed. 1991).  The GED levels include the reasoning ability required to perform the job, ranging from Level 1 (which requires the least reasoning ability) to Level 6 (which requires the most).  *See id.*

Plaintiff is limited to "understanding, remembering, and carrying out *simple*, *routine tasks*." (AR 48, emphasis added.) Importantly, although the ALJ did not include the "one [-] and two-step tasks" limitation in his hypothetical question to the VE, he did not articulate a basis for rejecting this aspect of the state agency consultants' opinions.

Plaintiff cites two Ninth Circuit cases to support his argument that a limitation to one- and two-step mental tasks creates a conflict with the vocational evidence in this case and would foreclose the possibility of Plaintiff performing Level 2 jobs. (ECF No. 13 at 10, citing *Zavalin v. Colvin*, 778 F.3d 842 (9th Cir. 2015); *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996 (9th Cir. 2015)). As Plaintiff acknowledges, under *Zavalin*, if Plaintiff were merely limited to performing "simple work" without the added limitation of one- and two-step mental tasks, Level 2 Jobs would be applicable.[7] (*Id.* at 10–11.) But, Plaintiff argues, pursuant to *Rounds*, the added limitation to one- and two-step tasks means the individual is limited to Level 1 Jobs. *Rounds*, 807 F.3d at 1002. The Court agrees. *Rounds* is routinely cited by Courts in this Circuit for the proposition that a limitation to one- and two-step tasks precludes an individual from performing Level 2 Jobs. *See, e.g.*, *Stefanie S. v. Kijakazi*, No. 20-cv-01134-RBM, 2022 WL 594547, at *4–5 (S.D. Cal. Feb. 22, 2022); *April M. v. Saul*, No. 18-cv-10083-GJS, 2020 WL 1062145, at *2–3 (C.D. Cal. Mar. 5, 2020); *Dale v. Berryhill*, No. 16-cv-02618-W-RNB, 2018 WL 1659851, at *4 (S.D. Cal. April 5, 2018). As *Zavalin* and *Rounds* illustrate, there is a meaningful difference between jobs requiring "one- and two-step tasks" and "simple, routine tasks"; thus, there is a conflict between Dr. Paxton and Dr. Bilik's opinions and the vocational evidence.

The Court acknowledges that the ALJ need not discuss every word or every limitation in an opinion, but where limitations are significant and plainly conflict with the

---

[7]  *Zavalin* stands for the proposition that work involving only "simple tasks," "simple, repetitive tasks," or "simple, routine, repetitive work," is consistent with the ability to perform Level 2 Jobs. *Zavalin*, 778 F.3d at 847 (finding a limitation to "simple, routine, or repetitive work" creates a conflict with VE testimony that the individual could perform jobs with GED Reasoning Level of 3).

RFC, the ALJ has some duty to either discount or incorporate them into the RFC. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *Flores v. Shalala*, 49 F.3d 562, 570–71 (9th Cir. 1995) (as amended) ("We have made it . . . clear that, in reaching her decision, the Secretary may not reject 'significant probative evidence' without explanation.") Here, the ALJ determined Plaintiff was not disabled because he was able to perform Level 2 jobs, and as stated above, he did so without explaining his tacit rejection of the limitation of one- and two-step mental tasks that Dr. Paxton and Dr. Bilik assigned. This was error, and the error was not harmless. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) ("An error is harmless if it is inconsequential to the ultimate nondisability determination, or if the agency's path may reasonably be discerned. . . ." (internal quotation marks and citations omitted)). Accordingly, remand is warranted on this issue.

### C.  Whether the ALJ Properly Evaluated Dr. Cerda's Opinion

Next, Plaintiff argues that the ALJ erred in rejecting the April 28, 2020 opinion from treating physician, Dr. Cerda. (ECF No. 13 at 11–13.) Defendant responds that the ALJ "properly considered the supportability and consistency factors for the medical source opinions and detailed why he found Dr. Cerda's 2020 opinion 'not persuasive[.]'" (ECF No. 16 at 19.) (internal citations omitted.) For the following reasons, the Court agrees with Defendant.

Although the 2017 regulations purported to eliminate the "physician hierarchy" deference to specific medical opinions and the assignment of "weight" to each medical opinion, the Ninth Circuit has not yet addressed whether, and to what extent, ALJs are still held to the "clear and convincing" and "specific and legitimate" standards when rejecting a medical opinion. *Robert D. v. Kijakazi*, No. 20-cv-02132-AJB-MSB, 2021 WL 5905734, at *3 (S.D. Cal. Dec. 14, 2021). Through regulation, the Social Security Administration may properly displace judicial precedent when an administrative agency intervenes by providing an "authoritative and reasonable interpretation of a statute." *See Lambert v. Saul*, 980 F.3d 1266, 1268, 1275 (9th Cir. 2020). Thus, district courts in the Ninth Circuit

generally have determined that the Circuit's prior rule providing deference to treating providers no longer applies because of the new regulations. *See, e.g., Kathy Jean T. v. Saul*, No. 20-cv-01090-RBB, 2021 WL 2156179, at *5 (S.D. Cal. May 27, 2021) ("This measure of deference to a treating physician is no longer applicable under the 2017 revised regulations."); *but see Kathleen G. v. Comm'r of Soc. Sec.*, No. C20-461-RSM, 2020 WL 6581012, at *3 (W.D. Wash. Nov. 10, 2020) (finding that the "specific and legitimate" standard for rejecting contradicted opinions of a treating doctor continues to serve as a "benchmark against which the Court evaluates [the ALJ's] reasoning"). This Court "agrees with the numerous district courts that found the treating source rule is inconsistent with the SSA's 2017 regulations, which effectively displace or override it." *Julie R. M. v. Kijakazi*, No. 20-cv-01608-LL-MDD, 2021 WL 4993034, at *4 (S.D. Cal. Oct. 26, 2021); *see Allen T. v. Saul*, No. EDCV 19-1066-KS, 2020 WL 3510871, at *3 (C.D. Cal. June 29, 2020) ("Nevertheless, the Court is mindful that it must defer to the new regulations, even where they conflict with prior judicial precedent, unless the prior judicial construction 'follows from the unambiguous terms of the statute and thus leaves no room for agency discretion.' The Court defers to the new rules here.") (quoting *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005)).

Accordingly, the Court will address the ALJ's evaluation of the medical opinion at issue here under the 2017 regulations, with an eye to whether the ALJ adequately explained his reasons for his assessment of the persuasiveness of Dr. Cerda's opinion. *See Titus L.S. v. Saul*, No. 20-cv-04825-AFM, 2021 WL 275927, at *7–9 (C.D. Cal. Jan. 26, 2021); *see, e.g., Kathleen G.*, 2020 WL 6581012, at *3 ("Whatever factors the Commissioner considers in evaluating a medical opinion, he must explain his reasoning to allow for meaningful judicial review."); *Jones v. Saul*, No. 19-cv-01273-AC, 2021 WL 620475, at *6–10 (E.D. Cal. Feb. 17, 2021) ("The new regulation does not allow the ALJ to forego articulation of their reason or reasons altogether; rather, it provides specific articulation requirements.") (internal citations omitted).

///

Under the revised regulations, supportability is the extent to which a source presents relevant objective medical evidence and explanations to support its opinion or finding. 20 C.F.R. § 416.920c(c)(1). The more relevant the evidence and explanations are, the more persuasive the opinion or finding will be. *See id.* Consistency is the extent to which an opinion or finding is consistent with evidence from other medical and nonmedical sources. 20 C.F.R. § 416.920c(c)(2). The more consistent it is with evidence from other sources, the more persuasive it will be. *See id.*

1. <u>Dr. Cerda's Opinion</u>

On April 28, 2020, Dr. Cerda completed a Mental Impairment RFC questionnaire regarding Plaintiff. (AR 696–701.) Dr. Cerda noted that Plaintiff has an anxiety disorder, schizoaffective disorder (bipolar type), chronic pain, tardive dyskinesia, and financial difficulties. (AR 696.) As to treatment, Dr. Cerda noted that Plaintiff had a "very positive response" to the medications Sustenna, Seroquel, and Inderal. (AR 696.) However, Dr. Cerda also stated that Plaintiff suffers from "severe paranoia, hallucinations, delusions[,] irritability, sleep problems, mood swings, anxiety, agitations, angry outbursts, command voices[, and] restlessness. (AR 696.) Dr. Cerda checked boxes on the form opinion next to these additional impairments:

> Blunt, flat or inappropriate affect; impairment in impulse control; pathologically inappropriate suspiciousness or hostility; mood disturbance; difficulty thinking or concentrating; psychomotor agitation or retardation; pathological dependence, passivity or aggressively; persistent disturbances of mood or affect; personality change; inappropriate suspiciousness or hostility; substance dependence; emotional withdrawal or isolation; bipolar syndrome with a history of episodic periods manifested by a full symptomatic picture of both manic and depressive syndromes, currently characterized by either or both syndromes; intense and unstable interpersonal relationships; impulsive and damaging behavior; perceptual or thinking disturbances; hallucinations or delusions; emotional ability; flight of ideas; manic syndrome; deeply ingrained, maladaptive patterns of behavior; loosening of associations; illogical thinking; easy distractibility; autonomic hyperactivity; sleep disturbance; [and] oddities of thought, perception, speech or behavior[.]

///

(AR 697.)  Notably, Dr. Cerda also found that Plaintiff has none-to-mild restrictions of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; one or two repeated episodes of decompensation; and would miss more than four days of work a month on average. (AR 700–01.)

The ALJ found Dr. Cerda's opinion not persuasive.  In particular, the ALJ stated "Dr. Cerda's opinion is not persuasive as it is internally inconsistent.  Dr. [C]erda opines [Plaintiff] has marked limitations, yet also says he has a 'very positive response' to medication. [AR 696.] Moreover, there are no treatment records from Dr. Cerda to support her opinion." (AR 51–52.)

2.  Discussion

Dr. Cerda's opinion was comprised largely of short responses or checked boxes without any explanations. (AR 696–701.) There are also no notes attached to Dr. Cerda's opinion, even though the first page of the form states that relevant treatment notes should be attached. (AR 696.)  The ALJ found that Dr. Cerda's opinion did not meet the supportability factor because of her lack of treatment records. (AR 52.)  "An ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation when determining how much weight to give a medical opinion." *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020).

Here, both Plaintiff and Defendant acknowledge that the record does not include any treatment notes or records from Dr. Cerda.  (ECF Nos. 13 at 13; 16 at 18.)  However, Plaintiff argues that Dr. Cerda's lack of treatment records "is irrelevant to the consideration of consistency and supportability" and that "Dr. Cerda had an adequate foundation" underlying her opinion. (ECF No. 13 at 13.)  The Court disagrees.  An ALJ can properly reject a physician's opinion that is limited to a check-box questionnaire if it is not supported by treatment notes or other medical evidence in the record. *Kramer v. Kijakazi*, No. 20-cv-02065-GPC-AHG, 2022 WL 873630, at *6 (S.D. Cal. Mar. 24, 2022) ("An ALJ 'may permissibly reject check-off reports that do not contain any explanation of the bases of their

conclusions.") (quoting *Ford*, 950 F.3d at 1155)). *But see* Burrell v. Colvin, 775 F.3d 1133, 1140 (9th Cir. 2014) (even though treating physician's assessments were of the "check-box" form and contained almost no detail or explanation, the record of his own extensive treating notes supported physician's opinions); *Esparza v. Colvin*, 631 Fed. App'x 460, 462 (9th Cir. Nov. 25, 2015); *Flowers v. Colvin*, No. 16-cv-05025-JRC, 2016 WL 4120048, at *4 (W.D. Wash. Aug. 3, 2016) ("the ALJ erred in rejecting [medical] opinions reflected on checked boxes, which were supported by his examination notes and clinical findings"). Although Plaintiff states, without citation, that "Dr. Cerda [had] access to [Plaintiff]'s records and the members of the staff that treated [Plaintiff]," the Court finds this unpersuasive because Dr. Cerda made no specific citations to these records in her opinion. Therefore, the Court finds the ALJ's conclusion that Dr. Cerda's opinion did not meet the supportability factor reasonable. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (finding that the Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record").

As to the consistency factor in the regulations, the Court finds that the ALJ did not err in finding that Dr. Cerda's opinion was internally inconsistent. *See Oscar S. v. Berryhill*, No. 18-cv-01152-AJB-RBB, 2019 WL 2549249, at *11 (S.D. Cal. June 20, 2019) (noting "internal inconsistencies within a medical opinion may constitute a specific and legitimate reason to give a physician's opinions reduced weight") (internal citation omitted). Dr. Cerda's finding that Plaintiff had a "very positive response" to medication could rationally be interpreted as inconsistent with her opinion regarding Plaintiff's "marked limitations." AR 696–701; *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (affirming ALJ rejection of medical opinion where physician's other recorded observations and opinion contradict assessment). As such, the Court finds that the ALJ did not commit reversible error when finding Dr. Cerda's medical opinion internally inconsistent.

As set forth above, the Court finds that the ALJ properly evaluated Dr. Cerda's opinion. The ALJ adequately addressed consistency and supportability, pursuant to the

revised regulations. 20 C.F.R. § 416.920c(b)(2) ("[W]e will explain how we considered the supportability and consistency factors" and "may, but are not required to, explain how we considered the [other enumerated] factors. . . .").

### D. Remand is Recommended

The law is well established that the decision whether to remand for further proceedings or simply to award benefits is within the discretion of the Court. *See, e.g.*, *Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990); *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989); *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). Remand for further proceedings is warranted where additional administrative proceedings could remedy defects in the decision. *See, e.g.*, *Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984); *Lewin*, 654 F.2d at 635. Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, *Kornock v. Harris*, 648 F.2d 525, 527 (9th Cir. 1980), where the record has been fully developed, *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986), or where remand would unnecessarily delay the receipt of benefits to which the disabled plaintiff is entitled, *Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir. 1985).

Here, the Court cannot conclude that further administrative proceedings would serve no useful purpose. On remand, the ALJ may be able to clarify his conclusion regarding a one- and two-step mental task limitation and resolve any conflict in the vocational evidence. Accordingly, the Court recommends that this case be remanded for consideration by the ALJ consistent with this opinion.

### VI. CONCLUSION AND RECOMMENDATION

For the reasons discussed above, the Court **RECOMMENDS** that Plaintiff's merits brief be **GRANTED** (ECF No. 13), and that Judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS HEREBY ORDERED** that any written objections to this Report and Recommendation shall be filed with the Court and served on all parties **no later than**

**August 9, 2022**.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties **no later than August 19, 2022**.

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir 1991).

**IT IS SO ORDERED.**

Dated:  July 25, 2022

Hon. Jill L. Burkhardt
United States Magistrate Judge